UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TANKA RAJ BC,

Petitioner,

v.

JULIO HERNANDEZ, Seattle Immigration and Customs Enforcement Director, et al.,

Respondents.

CASE NO. 2:26-cv-03110-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Tanka Raj BC's Petition for Habeas Corpus ("habeas petition"). Dkt. No. 1. Respondents are Julio Hernandez, Seattle Immigration and Customs Enforcement ("ICE") Director; Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); DHS; Todd Blanche, U.S. Attorney General; and Bruce Scott, Warden of the Northwest ICE Processing Center ("NWIPC"). *Id.* at 1; *see* Dkt. No. 3 (Notice of Appearance) at 1 n.1 (substituting Defendant Hernandez for Defendant Laura Hermosillo pursuant to Federal rule of Civil Procedure 25(d)). Having considered the habeas

petition, Respondents' return memorandum (Dkt. No. 4), Petitioner's traverse (Dkt. No. 10), and the relevant record, the Court GRANTS the petition and ORDERS Respondents to provide Petitioner with a bond hearing.

## I. BACKGROUND

Petitioner, a citizen of Nepal, contests the lawfulness of his current detention at NWIPC. Dkt. No. 1 ¶ 14. Petitioner has been continually detained since he entered the United States without inspection seeking asylum on January 10, 2025. *See id.* ¶¶ 21–23; Dkt. No. 1-5 (DHS Form I-213) at 3–4. Petitioner asserts that he was persecuted and assaulted in Nepal on account of his political affiliation. Dkt. No. 1 ¶ 51. On October 6, 2025, a merits hearing was held for Petitioner in the Tacoma Immigration Court. *Id.* ¶ 25; *see* Dkt. No. 1-4 (Order of the Immigration Judge). Petitioner was denied asylum, denied withholding of removal, and ordered removed to Nepal. Dkt. No. 1-4. Petitioner filed a timely appeal to the Board of Immigration Appeals ("BIA"), which was received on November 4, 2025. Dkt. No. 1 ¶ 26. Petitioner's briefing was completed on July 23, 2026; no brief was presented by DHS. *Id.* Petitioner's appeal remains pending before the BIA.

Petitioner filed the instant petition on September 1, 2026, after over 19 months of immigration detention. The habeas petition is now ripe for the Court's review.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

The Parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). *See* Dkt. No. 4 at 2; Dkt. No. 10 at 2. In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court read into the language of Section 1225(b)(1) a requirement of "mandat[ory] detention" for detainees under this provision "throughout the completion of applicable proceedings." 583 U.S. at 302. Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of *prolonged* mandatory detention for noncitizens detained pursuant to 8 U.S.C. § 1225. *See Banda v. McAleenan*, 385 F. Supp. 3d at 1106 (W.D. Wash. 2019). However, "nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (citation modified) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

The Parties also agree that the framework courts in this District apply to determine whether a noncitizen's detention under Section 1225(b) without a bond hearing has become unreasonably and unconstitutionally prolonged is the five-part multifactor test adopted in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117–18. *See* Dkt. No. 1 ¶ 42–52; Dkt. No. 4 at 4–11. Courts in this District apply the "*Banda* test" to assess when detention without a bond hearing under 8 U.S.C. § 1225(a) has become unjustifiably prolonged and thus violative of due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3–4; *Belqasim v. Bostock*, No. C25-1282, 2025 WL 3466971 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom Belqasim v. Hermosillo*, 2025 WL 3170929 (Nov. 13, 2025); *Hong v. Mayorkas*, No. C20-01784, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022). Both Parties present arguments on the *Banda*

factors, and this is the test the Court will apply in determining whether Petitioner's prolonged detention without a bond hearing violates the Constitution.[1]

### A. The *Banda* Factors

In assessing the constitutionality of prolonged mandatory detention, the court in *Banda* declined to apply the test established in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because balancing the *Mathews* factors does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided" and was "not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1106–07 (citation modified). Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id*. at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)).

#### 1. Total Length of Detention

The length of detention is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify."

[1] The habeas petition contains scattered references to a bond hearing held for Petitioner "in June" (Dkt. No. 1 ¶ 27; *see also id.* ¶ 45). Respondents do not argue that Petitioner has already been provided with a bond hearing. *See generally* Dkt. No. 4. Respondents' Declarant Deportation Officer Gabriel Arambula III asserts that "On April 7, 2026, Petitioner, with counsel, appeared at a bond hearing before an IJ in Tacoma, Washington. The IJ denied bond finding the IJ did not have jurisdiction to consider bond. Petitioner did not appeal the IJ bond denial to the BIA." Dkt No. 5 (Arambula Decl.) ¶ 17. Because any such hearing did not actually reach the question of whether bond is appropriate in Petitioner's case, it is not relevant to the Court's analysis.

*Murillo-Chavez v. Garland*, No. C22-303, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (Oct. 31, 2022).

As of the date of this Order, Petitioner has been in detention for approximately 21 months, "which is a very long time." *Banda*, 385 F. Supp. 3d at 1118–19 (considering 17-month detention and finding length "strongly favors" a bond hearing). In other words, Petitioner—who has been accused of no crime, and who came to the United States in pursuit of asylum and allegedly fleeing threats to his life—has lost nearly over a year and a half of his life to civil detention pending the outcome of a slow administrative process. Courts in this District have frequently found that detention approaching or exceeding a single year weighs in favor of granting a bond hearing. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *4 (16-month detention weighed in favor of granting a bond hearing); *Cardozo v. Bostock*, No. C25-871, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (same where detention was 12 to 13 months); *Maliwat*, 2025 WL 2256711, at *2 ("nearly" 12 months); *Rahman v. Garland*, No. C24-2132, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, 2025 WL 1919252 (July 11, 2025) ("almost" 12 months); *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024) (11 months), *report and recommendation adopted*, 2024 WL 1676681 (Apr. 18, 2024).

Respondents acknowledge that this factor is the most important factor and concede that "[a]s this length of detention is what Courts in this District typically find unreasonable, this factor weighs in favor of Petitioner." Dkt. No. 4 at 7. The Court agrees and finds that the first *Banda* factor weighs heavily in favor of granting a bond hearing.

**2. Likely Duration of Future Detention**

The second factor for the Court to consider is the likely duration of future detention. *Banda*, 385 F. Supp. 3d at 1118. Petitioner speculates that he "will likely wait several more

months (at a minimum) just to receive a decision" from the BIA. Dkt. No. 1 ¶ 46. Respondents posit that "[w]hile it is unknown as to when the BIA will render decision on Petitioner's appeal, it is reasonable that a decision will be rendered soon." Dkt. No. 4 at 7. Both Parties present their positions without any evidence or support. In *Banda* itself, however, the court noted that "[i]f the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit" and that this overall appeal process "may take up to two years or longer." 385 F. Supp. 3d at 1119 (concluding, "This factor favors granting petitioner a bond hearing.").

According to Petitioner, his BIA appeal was received on November 4, 2025, and his briefing was only received on July 23, 2026. Dkt. No. 1 ¶ 26. Therefore, the Court presumes that the remainder of the process, through resolution of any Ninth Circuit appeal, could push Petitioner's detention out another year or more. Respondent's statement that "If Petitioner's appeal is denied and the IJ's order of removal affirmed, ICE will be able to effectuate Petitioner's removal" (Dkt. No. 4 at 7) ignores Petitioner's right to file a judicial appeal and accompanying stay request, delaying the start of the removal period. *See* 8 U.S.C. § 1231(a)(1)(B)(ii).

Following *Banda*, the Court considers the length of future detention through any potential Ninth Circuit appeal, and therefore finds that the second *Banda* factor weighs in favor of granting a bond hearing.

**3. Conditions of Detention**

Next, the Court considers the third *Banda* factor—the conditions of detention. 385 F. Supp. 3d at 1118. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he or she is entitled to a bond hearing." *Diaz Reyes v. Wolf*, No. C20-0377, 2020 WL 6820903, at *6 (W.D. Wash. Aug. 7, 2020) (citation modified) (quoting *Jamal A.*, 358 F. Supp. at 860), *report and recommendation*

*adopted as modified*, 2020 WL 6820822 (Nov. 20, 2020), *aff'd sub nom. Diaz Reyes v. Mayorkas*, No. 21-35142, 2021 WL 3082403 (9th Cir. July 21, 2021).

Petitioner points to a number of decisions in which courts in this District have found that conditions at the NWIPC are, at best, similar to conditions of penal confinement. Dkt. No. 1 ¶ 48 (citing *Diaz Reyes*, 2020 WL 6820903, at *7; *Parada Calderon v. Bostock*, No. C24-1619, 2025 WL 1047578, at *4 (W.D. Wash. Jan. 17, 2025), *report and recommendation adopted in relevant part*, 2025 WL 879718 (Mar. 21, 2025); *Sarr v. Scott*, 765 F. Supp. 3d 1091, 1100–033 (W.D. Wash. 2025) ("the conditions . . . at NWIPC are similar or possibly worse than those . . . penal institutions"); *Toktosunov*, 2025 WL 3492858, at *5; *Duvine v. Hermosillo*, 814 F. Supp. 3d 1230, 1236 (W.D. Wash. 2026)). As Petitioner notes, "[r]eports by independent outside entities have also documented problems with food, medical neglect, cleanliness, and other issues at NWIPC." *Id.* ¶ 49 (citing Univ. of Wash. Ctr. for Hum. Rts., Conditions at the Northwest Detention Center (2026), https://jsis.washington.edu/humanrights/projects/human-rights-at-home /conditions-at-the- northwest-detention-center/ [https://perma.cc/FD5H-VXX4]). On a personal note, Petitioner alleges that he is "confined inside in a restrictive setting, where he does not go outside and the lights always remain on," and that he has had limited access to care for serious dental issues that have impacted his ability to sleep and eat. *Id.*

In their response, Respondents focus mainly on Petitioner's characterization of his dental care, providing an extensive list of dental visits provided by Dr. Eddie Wang, a Board-Certified Family Medicine physician and the Clinic Director of the NWIPC, who in turn sourced his account from "case review[] obtained from various records and systems maintained by ICE in the regular course of business." *See* Dkt. No. 4 at 8–10 (citing Dkt. No. 6 (Wang Decl.) ¶¶ 7–17); Dkt. No. 6 ¶¶ 1, 6. Dr. Wang opines that Petitioner has been provided "with adequate care and critical referrals since his arrival at the NWIPC," although he makes no other mention of

referrals in his declaration. Dkt. No. 6 ¶ 20.[2] Respondents also assert, relying on the declaration of Deportation Officer Gabriel Arambula III, that "[a]t the NWIPC, Petitioner has the option to go outside. There is an indoor recreation yard available to every housing unit that has fresh air [and] detainees are allowed to have one hour outside recreation sessions twice each day." Dkt. No. 4 at 8 (citing Dkt. No. 5 (Arambula Decl.) ¶ 21). Petitioner points out that an "indoor recreation yard" clearly does not provide the "option to go outside," and emphasizes that he "never" goes outside and, due to the number of detainees at NWIPC, "is lucky to have 'window time' once per week." Dkt. No. 10 at 4. Respondents do not address the independent report Petitioner cites or the voluminous findings by this and other Courts that NWIPC is a prison-like setting. Petitioner's account of conditions at NWIPC is consistent with the repeated findings of this Court and others in this District, and the Court finds that the third *Banda* factor weighs in favor of granting a bond hearing.

**4. Delays in Removal Proceedings**

Under the fourth and fifth *Banda* factors, the Court considers delays in the removal proceedings caused by the detainee or by the government, respectively. 385 F. Supp. 3d at 1118. Petitioner argues that this factor favors him because "[i]t took [Respondents] nearly ten months to find a translator for Mr. BC when he agreed to a Nepali translator he did not understand effectively; they then rescheduled Mr. BC's court date seven times, further prolonging the process." Dkt. No. 1 ¶ 50. Respondents counter that any interpreter-related delays were "due to Petitioner's misrepresentations that he could not speak Nepali," and that some continuances were requested by Petitioner to give him time to seek legal counsel and/or file an asylum application. Dkt. No. 4 at 3; *accord id.* at 10. On Reply, Petitioner provides more context about possible

[2] Respondents have not provided Petitioner's actual dental records or any declaration by any person with personal knowledge of his treatment, only Dr. Wang's secondhand summary of absent records.

underreporting by the Nepali government on the prevalence of “small languages” (such as his native Chhantayal) and on his own limited command of Nepali, which was used in his schools but not his home. *See* Dkt. No. 10 at 5.

The starkest disagreement here is whether blameworthy delays arise from Petitioner’s allegedly unnecessary request for a Chhantayal interpreter, or from the Immigration Court’s failure to provide a Chhantayal interpreter during the months following its determination that one should be provided. On the facts in the record, this is a dispute that the Court cannot (and need not) resolve. Ultimately, the parties agree that any language-related delays were limited to “approximately four months” (Dkt. No. 4 at 11) or “three months” (Dkt. No. 10 at 6). Unable to assign blame for these delays, the Court simply excludes from its analysis on the fourth and fifth Banda factors the four months following April 17, 2025, when Petitioner first informed the Immigration Court that he speaks Chhantayal. See Dkt. No. 5 ¶ 8. The Court is left with approximately 17 months of immigration detention as of the date of this order—sufficient in itself to constitute prolonged detention—during which neither Party is shown to have caused unnecessary delay. The Court therefore finds both the fourth and fifth *Banda* factors to be neutral.

**5. Likelihood That Proceedings Will Result in a Final Order of Removal**

Under the sixth *Banda* factor, the Court considers “the likelihood that removal proceedings will culminate in a final order of removal.” 385 F. Supp. 3d at 1120 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). “In other words, the Court considers whether the noncitizen has asserted any defenses to removal.” *Id.* Petitioner does not directly address the likelihood that his removal proceedings will result in a final order of removal, but rather asserts that “[i]t is likely that Mr. BC would successfully receive a stay of removal from Nepal because he has

demonstrated he is more likely than not to face persecution there." Dkt. No. 1 ¶ 51. Respondents suggest that the Court find this factor neutral.

In *Banda*, this factor was considered neutral where the petitioner had submitted an asylum application, the application had been denied, and the court did "not have sufficient information to determine whether the appeal [wa]s nonfrivolous or whether petitioner ultimately w[ould] prevail." 385 F. Supp. 3d at 1120. This Court, finding itself in a similar situation, agrees with Respondents: the sixth *Banda* factor is neutral here as well.

* * *

In sum, three of the six *Banda* factors, including the most important factor, weigh in favor of granting Petitioner a bond hearing, three are neutral, and none weighs against granting a bond hearing. Given the weight of the factors that favor Petitioner, the Court finds that his detention without a bond hearing has become unreasonably prolonged. *See Maliwat*, 2025 WL 2256711, at *9 (finding petitioner entitled to a bond hearing where two factors favor petitioner, four factors are neutral, and none favors respondents); *Fadul Mohamed* v. *Immigr. & Customs Enf't Field Off. Dir.*, No. C25-181, 2026 WL 497096, at *6 (W.D. Wash. Feb. 23, 2026) (same where three factors favor petitioner, two are neutral, and one favors respondents); *Rahman*, 2025 WL 1920341, at *5 (same where four factors favor petitioner, one is neutral, and one favors respondents); *Hong*, 2022 WL 1078627, at *7 (same where four factors favor petitioner, two are neutral, and none favors respondents).

**B. Petitioner's Arguments Under *Matthews***

In addition to his *Banda* analysis, Petitioner argues that his detention is unconstitutional under the due-process test established in *Mathews v. Eldridge*, 424 U.S. 319. The Court declines to apply the *Mathews* test here. As Petitioner notes (*see* Dkt. No. 1 ¶ 43), courts in this District generally apply *Banda*, not *Matthews*, to claims of prolonged detention under Section 1225(b).

This is for good reason. *Matthews* balancing allows courts to weigh the adequacy of the process provided when a person's liberty or property is taken away. But here, Petitioner alleges no inadequacy of process when he was first detained and thereby deprived of his liberty on January 10, 2025. *See generally* Dkt. No. 1. The violation he alleges is not related to the process of deprivation, but the prolonged nature of his detention; *Mathews* balancing is ill-suited for such a claim. Therefore, Petitioner's arguments under Mathews do not provide an additional basis for relief beyond what Petitioner has established through the *Banda* analysis.

**C. Appropriate Relief**

Having found that Petitioner's prolonged detention without a bond hearing has become unreasonable, the Court will now address his requests for relief. Petitioner asks the Court to order his immediate release unless Respondents hold a custody hearing for Petitioner within fourteen days, at which Respondents must establish by clear and convincing evidence that Petitioner poses either a flight risk or a danger to the community. Dkt. No. 1 at 18. Petitioner's proposed assignment of burden is supported by Ninth Circuit precedent, *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and his request is consistent with relief commonly ordered in this District to habeas petitioners who prevail under *Banda. See, e.g.*, *Cardozo*, 2025 WL 2592275, at *3 (ordering bond hearing within 14 days "that complies with the requirements of *Singh v. Holder*"); *Maliwat*, 2025 WL 2256711, at *10 (same); *but see Belqasim v. Hermosillo*, No. C25-1282, 2025 WL 3170929 (Nov. 13, 2025) (requiring hearing within seven days of order adopting report and recommendation). In lieu of a hearing, Respondents may comply with this order by releasing Petitioner.

## IV. CONCLUSION

Accordingly, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED.

(2) Within **fourteen (14) days** of this Order, Respondents SHALL either release Petitioner or provide him with a bond hearing before an immigration judge. At the hearing, the government SHALL bear the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. Respondents SHALL ensure that the hearing is recorded.

(3) Within **fifteen (15) days** of this Order, Respondents SHALL file a Status Report with the Court either confirming that Petitioner received a bond hearing—and informing the Court of the results of that hearing—or confirming his release.

(4) Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 9th day of October, 2026.

Tana Lin
United States District Judge